**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

JIMMY BRASSFIELD                                                    PLAINTIFF

VS.                                                     CAUSE NO. 1:17cv175-MPM-DAS

EVERGREEN HAULING, LLC and
JOHN DOES 1-20, Individually                                       DEFENDANT

<u>**ORDER**</u>

The parties have filed a joint motion to approve a settlement in the above-entitled action, and, as part of that motion, they have requested that this court determine the appropriate award of attorneys' fees for counsel for plaintiff. This court notes at the outset that few calls are more worrisome to judges than having to assess attorneys' fees, given that doing so requires them to evaluate, and at times second-guess, decisions made by counsel with regard to their handling of a case. This court has the highest personal and professional regard for counsel for both plaintiff and defendant, and it would ideally prefer not to have to address these issues. Nevertheless, the parties have agreed that it is necessary for this court to resolve these matters, and, that being the case, it has no option but to do so.

The issue of attorneys' fees has been the primary hindrance to settling this case, since defendant Evergreen Hauling, LLC ("Evergreen") expressed a willingness in April 2018 to pay plaintiff Jimmy Brassfield the full amount in backpay which he claimed in this FLSA overtime action. In an April 6, 2018 letter to plaintiff's counsel, defense counsel wrote that:

> If we assume that your calculation is correct and he is owed $770 in back wages for every eight- week period of his 18 months of employment, the most in back wages he could recover for his 18 months of employment is $6930. To resolve this case quickly and avoid the inefficiency of exchanging multiple offers, Evergreen will pay him this amount in exchange for his dismissal with prejudice of this case and his execution of a release of all claims against the company.

[Defendant's exhibit 4]. This $6930 in backpay which defendant offered in April 2018 was the exact amount which it ultimately paid plaintiff in the settlement in this case, and defendant argues, persuasively in this court's view, that the amount of fees sought by plaintiff's counsel is excessive. This is particularly true considering that many of these fees relate to work which, plaintiff's counsel concedes, was performed after the April 6 offer.

In his April 6 letter, counsel for defendant stated his opinion that the $15,000 in attorneys' fees which counsel for plaintiff was seeking at the time was excessive and that Evergreen was not prepared to pay him that amount. [*Id.*]. Largely because of the dispute over attorneys' fees, this request has only grown in the intervening months, and counsel for plaintiff now seeks for this court to award him $25,200 in fees.

It should be noted, however, that counsel's time after the April 6 offer was not exclusively spent on pursuing his own recovery of fees. A complication in the settlement arose when plaintiff indicated to defendant that he had never wanted to file a lawsuit in the first place. In a May 14, 2018 e-mail to counsel for plaintiff, defense counsel wrote that:

> Howard – We need to talk. I tried to call you back Friday. When our guy handed the letter to Brassfield, Brassfield told him he did not want to bring this lawsuit in the first place and said he had made it clear to you that he had no interests in pursuing it. Needless to say, Evergreen is upset because they believe this was solely attorney driven. I told them I would talk to you. Based on what Brassfield said, I don't believe they will pay anything at this point, and I certainly don't think we have a deal.

[Defendant's exhibit 6]. It seems clear to this court that this complication did require some time and attention on the part of plaintiff's counsel, but it appears from his timesheets that most of his time was devoted to other matters.

In taking exception to the amount of attorneys' fees requested by plaintiff, defendant also emphasizes that his counsel has already been awarded $6,000.75 in attorneys fees and $500 in costs in a companion case filed before Judge Davidson. *Jesse Hendrix v. Evergreen Hauling,*

*LLC, et al.*, No. 1:18cv114-GHD-DAS.  In *Hendrix*, which arises from a complaint almost

identical to the one in this case, counsel for plaintiff had requested that he be awarded $8,700 in

fees and $575 in costs, based on twenty-nine hours of work billed at a rate of $300 per hour.

[Docket entry 19 at 1].  In substantially reducing this amount, Judge Davidson wrote that:

> Here, Hendrix's counsel provides no proof that he wrote off unproductive, excessive, or redundant hours. In fact, the bill submitted shows he did not. For example, the June 5, 2018 entry bills two hours for drafting the complaint, summons, proof of summons, and certificate of service. While two hours on its face may be reasonable for such tasks, as Evergreen points out, the complaint in this case is almost virtually identical to the complaint filed by Hendrix's counsel in another matter against Evergreen. *See* Compl. [1], *Brassfield v. Evergreen Hauling, LLC*, Civil No. 1:17-cv-00175-MPM-DAS.
>
> This is turn highlights another issue with the billing requests. Hendrix's counsel was representing another FLSA plaintiff in a case against Evergreen. The emails and correspondence between Hendrix's and Evergreen's counsel provided to the Court indicate that Hendrix's counsel worked on these matters simultaneously. If counsel spent time working on both matters at once, he cannot bill that full amount of time to both clients; to do so would constitute double-billing. But the billing request is silent as to whether and how counsel allocated the hours between the two clients.

*Hendrix v. Evergreen Hauling*, 2019 WL 138160, at *2–3 (N.D. Miss. Jan. 8, 2019)

Judge Davidson thus noted the existence of the instant action before this court, and he

concluded that it would be inappropriate to allow counsel to be paid twice for the same work.

This court finds Judge Davidson's analysis to be persuasive, and it agrees that some downward

reduction in the amount of attorneys' fees is appropriate based upon the fact that a number of

matters, including the drafting of virtually identical complaints, were made far easier by the

*Hendrix* litigation, for which plaintiff has already been compensated.  That aside, this court

emphasizes that plaintiff is seeking a far larger sum of attorneys' fees in this case than in

*Hendrix,* even though the number (and nature) of the docket filings in the two cases are very

similar.  Once again, counsel for plaintiff is seeking $25,200 in attorneys' fees in this case, and

this court finds this to be a surprisingly large sum for a case which settled even before most

discovery had been completed. This court therefore believes that a much greater reduction in the requested amount of attorneys' fees is appropriate in this case than in *Hendrix*.

In so stating, this court notes that the amount of attorneys' fees which plaintiff's counsel is seeking in this case is similar to fee requests which it has seen in cases which have been fully litigated through trial. In *Young v. Bd. of Supervisors of Humphreys Cty., Mississippi*, 2018 WL 5807637 (N.D. Miss. 2018), for example, this court recently considered the issue of attorneys' fees in a case which, unlike this one, had been fully litigated. In *Young*, the counsel for plaintiff asserted that he had performed an amount of work equivalent to $33,000 in attorneys' fees for a case in which discovery had been completed, Rule 12 motions to dismiss and Rule 56 motions for summary judgment had been litigated, and a full jury trial had been conducted. [*See Young* docket, case number 4:16cv66]. Nevertheless, recognizing that the jury's award of $25,000 in damages against Humphreys County was less than had been sought, counsel for plaintiff sought for this court to only award him $15,000 in attorneys' fees. *Young*, 2018 WL 5807637, at *2. This court agreed that, considering the limited success obtained by plaintiff, this was a reasonable sum of attorneys' fees, and it entered a judgment in this amount. *Id.*

It is very much unclear to this court why, if the counsel for plaintiff in *Young* was able to fully litigate a case through trial for $33,000 in attorneys' fees (of which he sought only $15,000) plaintiff's counsel in this case was able to incur over $25,000 in attorneys' fees for a case in which the docket is comparatively empty. Indeed, the docket reveals that, aside from the eight-page complaint which initiated this case (and *Hendrix*), the only substantive briefing completed by counsel involved his present attempts to secure compensation for himself. Based on counsel's timesheets, it appears that the limited discovery which took place in this case did not include any depositions and was limited to initial disclosures and the preparation of

interrogatories and requests for production of documents. Under these circumstances, this court can only conclude that the fee request in this case is excessive.

Having given its general impression of the attorneys' fee issue in this case, this court now turns to the specific law in this context, much of which involves factors duplicative of the considerations stated above. To determine whether Brasfield's fees request is reasonable, the court must first perform a lodestar calculation and then consider the request in light of the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Courts calculate a "lodestar" by multiplying the hours reasonably spent on the case by an appropriate hourly rate. *Id.* (*citing Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)). Courts may then adjust that amount based on the twelve factors set forth in *Johnson.*

These twelve *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases. *Johnson*, 488 F.2d at 717–18. While "the most critical factor in determining an attorney's fee award is the degree of success obtained," *Saizan*, 448 F.3d at 799, "'a low damages award alone ... should not lead the court to reduce a fee award.'" *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013) (quoting *Saizan*).

Crucially, plaintiff's own briefing does not attempt to portray his minor recovery in this case as a success; to the contrary, he asserts that he was entitled to much more and was forced to

take defendant's "take it or leave it" offer based on his financial hardships. [Reply brief at 10].

Clearly, this is a damaging admission, given that, to reiterate, "the most critical factor in

determining an attorney's fee award is the degree of success obtained." *Saizan* at 799.

Considering that plaintiff himself does not seek to characterize this lawsuit as a successful one, it

is unclear to this court why his counsel should be entitled to such an extraordinary large recovery

of fees. Moreover, it appears that the primary reason for the limited success which plaintiff did

have in this case was defendant's conclusion, at any early point in the litigation, that it would be

cheaper for it to simply pay him the overtime he requested than to litigate this case. Certainly,

nothing leads this court to believe that the various "reviews" of the file performed by counsel had

a significant role in bringing defendant to the settlement table.

 Plaintiff argues that an hourly rate of $300/hour in this case is appropriate, and this court

does not take issue with this argument. However, determining the amount of hours reasonably

spent on this case is exceedingly difficult, considering the sheer vagueness of the timesheets

submitted by plaintiff's counsel. As noted by Judge Davidson in *Hendrix*:

> Second, the Court [finds] that the remaining 25.25 hours should be reduced because
> Hendrix's counsel failed to demonstrate billing judgment and submitted vague, block-
> billed entries. "[P]laintiffs seeking attorney's fees are charged with the burden of
> showing the reasonableness of the hours billed and, therefore, are also charged with
> proving that they exercised billing judgment." *Saizan*, 448 F.3d at 799 (citing *Walker v.
> City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002)).

*Hendrix*, 2019 WL 138160 at \*2. Judge Davidson's observations regarding the vagueness of

counsel's timesheets could have likewise been made regarding the timesheets in this case.

Plaintiff's counsel submits that he spent eighty-four (84) hours on this case, but, as discussed

below, the overwhelming majority of his timesheet entries involved his "review" of the "file"

and various e-mails, most of which were billed in half-hour increments, with no attempt to

explain exactly how the "reviews" advanced the litigation of the case. When this court is

confronted with billing entries of this nature, it makes it virtually impossible for it to evaluate

whether the "reviews" in question were truly necessary and added anything of substance to the

prosecution of the case.

As quoted above, the first three *Johnson* factors are "(1) the time and labor required for

the litigation, (2) the novelty and complication of the issues and (3) the skill required to properly

litigate the issues." In the court's view, these factors all support a reduction of the claimed

amount of attorneys' fees, since it does not require a great amount of either time or expertise to

prevail in a case which the defendant had decided to settle early on in the litigation. True

enough, there was a complication in the settlement attributable to plaintiff's statement to his

employer that he had not wanted to bring suit in the first place. [Defendant's exhibit 6]. Counsel

for plaintiff attributes this hesitancy to plaintiff's fear of retaliation, and this court does believe

that counsel deserves some credit in prevailing upon his client to continue with the case and

accept the settlement. This court will duly grant counsel that credit, but it does not appear that

overcoming this obstacle required any great amount of time on his part. This court does not

regard any of the next four *Johnson* factors, namely "(4) whether the attorney had to refuse other

work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or

contingent;" or "(7) whether the client or case circumstances imposed any time constraints" as

requiring any adjustment in the fee calculations in this case.

Of the remaining *Johnson* factors, this court regards the eighth and twelfth ones as

supporting a reduction of the attorneys' fee award in this case, for reasons which it has already

explained above but will briefly reiterate.[1] As to the issue of "the amount involved and the

---

[1] As noted previously, the remaining *Johnson* factors are (9) the experience, reputation, and
ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client

results obtained," this court notes that the settlement in this case involved a payment to plaintiff of only $6,930, and defendant expressed a willingness to pay this amount early in the litigation. Plaintiff correctly notes that there is no strict rule of proportionality in determining attorneys' fees in FLSA cases, but this remains one of the relevant *Johnson* factors, and it is therefore appropriate that this court address it. It certainly strikes this court as eye-opening that counsel is seeking almost four times the recovery for himself as he obtained for his client. As to the twelfth factor of "awards made in similar cases," this court reiterates its impression that awarding over $25,000 in attorneys' fees for a case which settled at such an early stage of the litigation and which had such limited success is out of line with fee awards in other cases before it.

Considering plaintiff's limited success in this case, the limited amount of discovery which was performed, the duplicative nature of much of the work in *Hendrix*, and defendant's stated willingness to settle it at any early stage of the proceedings, this court concludes that an award of nine thousand dollars ($9,000) in attorneys' fees is appropriate. This amount is somewhat greater than the amount awarded by Judge Davidson in *Hendrix*, but not dramatically so. While counsel asserts that he spent much more time in this case, the dockets in the two cases are, to reiterate, almost identical. Moreover, the results obtained by the plaintiffs in the two cases are very similar. This being the case, this court does not believe that counsel's request for almost four times greater fees in this case than in *Hendrix* is, by any means, appropriate. At the end of the day, the proof of the pudding is in the eating, and this court sees nothing in either plaintiff's limited success in this case or in the legal work product reflected on the docket and exhibits in this case which would justify anything close to $25,000 in attorneys' fees. While

---

relationship and whether that relationship was long-standing. This court does not regard any of these factors as supporting an adjustment of the claimed attorneys' fees.

there is certainly nothing magical about the sum of $9000, it is the sum which this court, upon reflection, believes best reflects the legal work performed in this case.

Turning to the issue of costs, 28 U.S.C. § 1920 permits the taxing of costs for "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Further taxation of costs for reasonable litigation expenses, including process server fees, is permitted under FLSA. *Sales v. Bailey*, No. 2:12-CV-00056-SA-SAA, 2015 WL 1825060, at *6 (N.D. Miss. Apr. 22, 2015) (citing 29 U.S.C. § 216(b)). As it did in *Hendrix*, defendant challenges plaintiff's $75 expense described only as "Copies, Fax, and Telephone," writing that "there is no indication how many copies were made, the rate at which reimbursement is sought, or if the copies were even necessary." Like Judge Davidson in *Hendrix*, 2019 WL 138160, at *4, this court finds this argument persuasive, and it will accordingly deduct $75 from the costs sought by plaintiff, for a total of $800 in costs.

For the reasons discussed above, this court awards plaintiff $9000 in attorneys' fees, $800 in costs and $1,875 in expert witness fees, for a total of $11,675. The settlement reached between the parties is hereby approved, and this case is dismissed with prejudice.

This the 22nd day of April, 2019

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**